# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

MICHAEL & NATALIE FREY

    *on behalf of* PINEVILLE
COMMUNITY HEALTH CENTER,
INC.

    PLAINTIFF,

v.

DENNIS VARGHESE, et. al.,

    DEFENDANTS.

CIVIL ACTION NO. 6:24-CV-178-REW-EBA

## DECLARATION OF MICHAEL FREY

My name is Michael Frey. I am over eighteen years of age and am competent to testify. I make this declaration based on my personal knowledge and belief.

1. Until November 2024, I worked at the Pineville Community Health Center, Inc., most recently serving as the hospital's President/CEO.

2. As part of my responsibilities, I held an ex officio position on the hospital's board of directors. The other members of the board that I served alongside are Natalie Frey (Chairperson of the board), Dennis Varghese (member), and Sheryl Richter (member).

3. Amongst our contributions to the hospital, Mrs. Frey and I brought many years of experience in hospital administration, particularly in achieving funding from and maintaining a relationship with Medicare.

4. Mr. Varghese had primary responsibility for managing the hospital's finances.

5. In 2023, Mr. Varghese transferred at least $7 million from Pineville's bank accounts with b1Bank to a new account with a bank in Iowa called Exchange State Bank.

1

6. Mr. Varghese's misappropriation of these funds occurred without the knowledge or consent of myself or Mrs. Frey; only Ms. Richter was aware of and participated in the misappropriation.

7. I first learned that Mr. Varghese had transferred funds from the hospital's former-CEO, Dr. Timothy York, in November 2023, but I was assured by Mr. Varghese that the funds were still in a hospital account.

8. I had no reason not to believe Mr. Varghese. From February 2024 to May 2024, approximately $2,500,000 were transferred piecemeal into Pineville's b1Bank account from one or more external accounts, supporting Mr. Varghese's assurances the funds were being maintained properly.

9. In or around late October 2024, I learned that Mr. Varghese's assurances were untrue. At that time, a Pineville employee, Susan Scott-King—who began assisting with the preparation of the annual Medicare report in September 2024—advised us that she was having difficulty getting necessary financial information from Mr. Varghese. I contacted Mr. Varghese seeking the financial information but Mr. Varghese refused to provide me access to such information. Brian Brown, the hospital's Network and IT Administrator, advised me that a former employee had previously mentioned something to him about an unusual voicemail left by an Iowa bank. Voicemails left to hospital employees were also sent to the employee's email. I asked Mr. Brown to search for the email containing this voicemail from the Iowa bank. Mr. Brown forwarded me a voicemail received from an Exchange State Bank employee the previous year inquiring about an unusually large wire transfer from the hospital to the Exchange State Bank.

10. Upon hearing the voicemail, I called Exchange State Bank, at which time I learned that there was an account with the bank in Pineville's name, but only $100 was ever placed in that

account. As with the transfers, the creation of this account in the hospital's name occurred without the knowledge or consent of myself or Mrs. Frey. Because the hospital's name was not on the account that received the extremely large wire transfer, Exchange State Bank was unable to give me any information as the President/CEO of Pineville Hospital.

11. Since that time, in my capacity as President/CEO, and in conjunction with Mrs. Frey in her capacity as Board Chair, I have requested that Defendants account for and return their misappropriated funds.

12. Mr. Varghese and Ms. Richter have repeatedly insisted the misappropriated funds are safe, but they have never provided evidence to confirm that fact.

13. In response to one of my recent inquiries, Mr. Varghese and Ms. Richter stated that the remaining funds were returned in November 2024, but an examination of Pineville's account with b1Bank did not reveal any incoming transfers that could account for the missing funds. Instead, Mr. Varghese and Ms. Richter appear to have, for reasons unknown, transferred still more funds from the hospital's checking account into a 90-day certificate of deposit.

14. As a non-profit hospital, Medicare funding is critical to Pineville's existence. And as a Medicare-funded hospital, the hospital is required to complete an annual cost report to send to the authority, the most recent of which was due by the end of November 2024.

15. As directors on the hospital's board, Mrs. Frey, Mr. Varghese, Ms. Richter, and I are required to provide financial information in our possession, custody, or control needed to complete the annual Medicare report. To date, Mr. Varghese and Ms. Richter have failed to do so, despite numerous requests.

16. On November 22, 2024, Mr. Varghese and Ms. Richter received a demand letter from Pineville's counsel seeking an accounting and return of all misappropriated funds and requiring that they furnish all needed financial information for the annual Medicare report.

17. On Tuesday, November 26, 2024, Ms. Richter responded by email that she and Mr. Varghese were obtaining counsel and would respond further the following day.

18. The following morning, Mrs. Frey and I, along with various hospital staff, learned that our access to Pineville bank accounts had been terminated. We also discovered that a stop payment order had been placed on at least one vendor contract for diabetes treatment that was set to begin on Monday, December 2, 2024.

19. Shortly thereafter, I received a call from Mr. Varghese (using an unknown phone number) informing me that Mrs. Frey had been terminated as Chair of the Board of Directors and that I had been terminated as President/CEO.

20. Soon after, Pineville's counsel received correspondence that a sole member of the hospital voted to remove Natalie as Chair, the remaining directors—Mr. Varghese and Ms. Richter—named a replacement director, and this "new" board decided to terminate my employment, to terminate the consulting agreement Mrs. Frey and I had with the hospital, and to terminate Pineville's counsel.

21. I do not know who the supposed "member" of the hospital is, nor do the hospital's Articles of Incorporation or Bylaws indicate who this could be.

22. Regardless, neither I nor Mrs. Frey were given notice of any meeting to address my purported termination.

23. Since our invalid terminations, Mrs. Frey and I have repeatedly attempted to identify the location of the misappropriated funds and to obtain the withheld financial information in an effort to submit and accurate cost report to Medicare.

24. Mr. Varghese and Ms. Richter have evaded these efforts; as it stands, Pineville has not submitted a cost report to Medicare at this time.

25. Since our invalid terminations, hospital employees have been told not to speak with Mrs. Frey and me. Several long-time hospital employees have been terminated by Mr. Varghese and Ms. Richter after asking questions about their actions. We have further been advised that Mr. Varghese has directed that our emails be deleted from the server.

I affirm, under the penalties for perjury, that the foregoing representations are true.

12/18/2024
Date

*[Signature: Michael Frey]*